# NORFOLK AND WESTERN RAILWAY COMPANY

v.

## BETTY J. WASELCHALK

Record No. 911824

September 18, 1992

Present: All the Justices

*John Y. Richardson, Jr. (David N. Anthony; Eugene R. Marable, Jr.; Williams, Kelly & Greer*, on brief), for appellant.
No brief or argument for Betty J. Waselchalk.

JUSTICE WHITING delivered the opinion of the Court.

The sole issue here is whether a prescriptive right-of-way can be acquired over a public utility's property, which property is being used for a public purpose.

On March 1, 1851, William B. Potts and Charity S. Potts, his wife, conveyed a strip of land running generally east and west across their farm (the Potts-Stanfield farm) to the South Side Railroad Company (South Side) for the construction and operation of a railroad. Because the strip of land bisected the farm, South Side constructed a crossing that connected the two portions, as required by statute,[1] and that its successor, the Norfolk and Western Railroad Company (N&W), maintained.

In 1984, successors in title to the owners of the Potts-Stanfield farm conveyed to Betty Waselchalk an easement of right-of-way over a road that traversed the farm and N&W's tracks at the crossing South Side had built, and N&W was maintaining. This right-of-way was to serve Waselchalk's property, which adjoined the Potts-Stanfield farm. The record also indicates that the previous owners of Waselchalk's land had used this easement for agricultural and related purposes for some time without permission from the owners of the Potts-Stanfield farm.

In 1985, Waselchalk planned to move a mobile home onto her land for use as her residence, and to use the right-of-way as her means of access to a public highway. Waselchalk made inquiries of N&W regarding such use. Upon learning of Waselchalk's plan to

---

[1] Code § 56-16, in substantially the same language as its ancestor, Code (1849) tit. 17, c. 56, § 22, provides in pertinent part:

> Every public service corporation, whose road, canal, or works passes through the lands of any person in this State, shall provide proper and suitable wagonways across such road, canal, or other works, from one part of such land to the other, and shall keep such ways in good repair.

use the crossing as access to her residence, N&W advised Waselchalk that she would have to sign a crossing agreement. Waselchalk moved the mobile home onto the property and used the crossing for about a year before she was furnished with a copy of the proposed crossing agreement.

Because residential use of a railroad crossing is more frequent than farm use, N&W requires residential-crossing permit holders to pay the cost of safety improvements to farm crossings. Although N&W pays the maintenance costs of lesser-used farm crossings in accordance with Code § 56-16, residential-crossing permit holders must also pay the maintenance costs of a residential crossing. Waselchalk refused to sign N&W's proposed agreement that reflected her obligations to pay these costs, and brought this suit to establish her prescriptive right to use the crossing.

Following an *ore tenus* hearing, the chancellor held that although Waselchalk had failed to ''prove an easement by prescription for residential uses,'' she had established a prescriptive right to use the crossing ''for agricultural and related uses.'' Accordingly, the chancellor enjoined N&W from interfering with those uses. The chancellor also directed that a copy of the decree be recorded showing N&W as grantor and Waselchalk as grantee. N&W appeals.

■ We will assume, but not decide, that Waselchalk carried her burden of proving all the necessary elements of a prescriptive easement upon property not used for public purposes. Citing the case of *Chesapeake and Ohio Canal Co.* v. *Great Falls Power Co.*, 143 Va. 697, 719, 129 S.E. 731, 738 (1925), Waselchalk contended in the trial court that she could acquire a prescriptive right in N&W's property that was used for a public purpose.[2] However, *Great Falls Power Co.* involved a prescriptive easement in property owned by a public utility that was not being used for public purposes.

■ We have said that '' 'no prescriptive right can be acquired in property affected with a public interest or dedicated to a public use.' '' *Preshlock* v. *Brenner*, 234 Va. 407, 409, 362 S.E.2d 696, 697 (1987) (quoting *City of Lynchburg* v. *Chesapeake and Ohio Ry.*, 170 Va. 108, 116, 195 S.E. 510, 514 (1938)). There can be little doubt that this railroad property is affected with a public interest; an average of 3,808 N&W railroad cars traverse this crossing each day.

Therefore, we conclude that the chancellor erred in two respects: first, in finding that Waselchalk had a prescriptive right to use

[2] Waselchalk filed a memorandum in the trial court but filed no brief on appeal.

N&W's crossing for any purpose, and second, in enjoining N&W's interference with her use of the crossing. Accordingly, we reverse the decree of the chancellor and remand this cause for entry of an appropriate decree, and for correction of the land records, consistent with this opinion.

*Reversed and remanded.*