# CIRCUIT COURT OF ROCKINGHAM COUNTY

John S. Zimmerman

v.

Daniel W. Brubaker et al.

February 1, 2002

Case No. CH99-17452

BY JUDGE JOHN J. MCGRATH, JR.

This action was filed by Plaintiff *pro se* on August 11, 1999, as an action in chancery styled "Civil Liberties Motion," which rehashed the details of a right-of-way dispute between these parties which has been in litigation on a more or less full-time basis since 1985. Previous judicial proceedings have resulted in the following decisions relating to the same parties and the same disputed right-of-way.

(1) Final Decree dated March 17, 1988, entered by the Circuit Court of Rockingham County under the style of *John S. Zimmerman et al. v. Daniel W. Brubaker et al.* (Chancery Docket No. 11416).

(2) Order dated December 18, 1989, entered by the Circuit Court of Rockingham County, Virginia, in the chancery cause therein pending under the style of *Daniel W. Brubaker et al. v. John S. Zimmerman et al.* (Chancery Docket No. 12748).

(3) Order dated January 18, 1990, entered by the Circuit Court of Rockingham County, Virginia, in the chancery cause therein pending under the style of *Daniel W. Brubaker et al. v. John S. Zimmerman et al.* (Chancery Docket No. 12748).

(4) Decree dated October 18, 1991, entered by the Circuit Court of Rockingham County, Virginia, in the chancery cause therein pending under the style of *Daniel W. Brubaker et al. v. John S. Zimmerman et al.* (Chancery Docket No. 12748).

(5) Final Decree dated April 20, 1991, entered by the Circuit Court of Rockingham County, Virginia, in the chancery cause therein pending under the style of *Daniel W. Brubaker et al. v. John S. Zimmerman* (Chancery Docket No. 12748).

(6) Final Orders of the Unites States Court of Appeals for the Fourth Circuit dated August 7, 1996 (Docket No. 96-1450), and the United States District Court for the Western District of Virginia, Harrisonburg Division, dated January 9, 1996, and August 15, 1995, in the action therein pending under the style of *John S. Zimmerman v. Daniel W. Brubaker et al.* (Docket No. 95-0039-H).

(7) Decree dated March 17, 1998, entered by the Circuit Court of Rockingham County, Virginia, in the chancery cause therein pending under the style of *John S. Zimmerman et al. v. Daniel W. Brubaker et al.* (Chancery Docket No. 11416).

(8) Order and Opinion dated April 25, 2001, entered by the Circuit Court of Rockingham County, Virginia, in the chancery cause pending under the style of *John S. Zimmerman v. Daniel W. Brubaker et al.* (Chancery Docket No. CH99-17452) (present case).

On September 28, 1999, this Court, after noting that the Plaintiff desperately needed legal counsel to assist him in framing his pleadings, sustained Defendants' Demurrers and the Plea in Bar "to the extent the ... complaint seeks to re-litigate any matters resolved by the eight (8) prior orders or decrees" previously entered. The Court also ordered the Plaintiff to file a bill of particulars. The Plaintiff complied with that Order on October 6, 1999.

The matter then lay dormant until August 21, 2000, when the Plaintiff's newly retained counsel filed a Motion noting his appearance for Plaintiff and requested leave to file amended pleadings. The Motion was granted and Plaintiff's counsel filed an Amended Bill of Complaint on September 12, 2000. The Amended Bill of Complaint alleged, *inter alia*:

(1) That Plaintiff has a twelve-foot easement across Defendant's land, which easement was laid off in a Decree of this Court on April 30, 1991;

(2) That since May 1, 1991, the Defendant had interfered in various ways with the designated right-of-way; and

(3) That Plaintiff was entitled to damages of $75,000.00 and a permanent injunction restraining Defendant from interfering in the future with Plaintiff's right-of-way.

This request for damages was later amended to also call for punitive damages. (Order dated June 19, 2001.)

In the past, litigation between this Plaintiff and these Defendants had established by various Orders that:

(1) Plaintiff had a twelve-foot wide easement across Defendant's land. (Order dated March 17, 1988.)

(2) Plaintiff's easement "is limited in scope to normal farm or residential use for not more than one single family dwelling, exercised in such a manner as not to interfere significantly with the Defendants' ... farming operation." (Order dated March 17, 1988.)

(3) That Plaintiff has been prohibited from grading or graveling the right-of way. (Order datedOctober 18, 1990.)

(4) That Defendants were "enjoined ... from interfering with the free and dominant use of said easement by Plaintiff and are required to remove any and all permanent obstructions across the right-of-way. ..." (Order of Rockingham County Circuit Court dated March 17, 1988.)

The Court permitted Plaintiff to pursue his claim for interference with his right-of-way easement and attempt to prove damages for the period after May 1, 1991 (the date of the last adjudication in Docket No. 12748), and consistent with the applicable statute of limitations. Given that the instant action was filed on August 11, 1999, the Plaintiff sought to recover damages from August 12, 1994, to the date of trial.

On August 16, 2001, this Court granted pursuant to § 8.01-336(E) of the Code of Virginia the following issues out of chancery to be tried before an advisory jury:

(1) Did Defendant and/or his agents after August 12, 1994, deprive the Plaintiff of the use and benefit of the easement established in *John S. Zimmerman et al. v. Daniel W. Brubaker et al.* (Docket No. 11416, March 17, 1988) and as more specifically set out in the Plat attached to the Order of the Rockingham County Circuit Court dated April 30, 1992, in *Daniel W. Brubaker et al. v. John S. Zimmerman et al.* (Docket No. 12748)?

(2) If so, what is the amount, if any, of Plaintiff's compensatory damages?

(3) If so, what amount of punitive damages, if any, is Plaintiff entitled to receive?

At the conclusion of the evidence, the jury returned an advisory verdict recommending that the Plaintiff recover $25,000 compensatory damages and $10,000 punitive damages.

The matter is now before the Court for decision by the Court on the correct verdict and the amount, if any, of the damages to be awarded to the Plaintiff and what other relief may be just and equitable. Also, the Defendants have pending pleas of estoppel, statute of limitations, *res judicata*, and laches.

From the testimony at the trial, it is apparent that this prescriptive easement obtained by Plaintiffs over Defendants' land memorialized in a decree of this Court in 1988 has been a bitter and emotional issue between these two families for decades. It has led to almost ceaseless litigation and a number of personal confrontations over the years.

There is little question that Defendants have never really "accepted" the fact that the Plaintiff has a right-of-way over their property. In fact, the Defendants' adult son (who is the tenant farmer on the property which is the servient estate) to this day refers to the easement and right-of-way as the "so-called prescriptive easement." (Tr. 126.)

On the other hand, the Plaintiff is over ninety years old, appears to be almost completely deaf and is so cantankerous that he quarrels with his own lawyer (at an elevated decibel level) throughout all of the judicial proceedings. The historical records of the various proceedings in this dispute are something of an enigma because, throughout most of the last decade, the Plaintiff has insisted on representing himself and many of the complaints he has raised and filed as legal proceedings are indecipherable or completely muddled in their phraseology.

The evidence adduced at trial was that, after the judicial scrimmaging which took place in 1988 to 1991, the Defendants erected (as they were permitted to do) a gate across the point where the easement came off Plaintiff's property. The Plaintiff, who apparently used the easement to ride his horse and buggy or a bicycle and to walk to and from State Route 702, promptly threw away the key that was presented to him by the Defendants. (Tr. 75, 77.) However, the Plaintiff continued to use and/or try to use the easement by climbing over the fence and walking along the easement or by lifting his bicycle over the fence and pedaling it along the easement. (Tr. 61, 69, 73.) On at least one occasion, when Plaintiff attempted to drive his horse and buckboard along the easement, it led to a rather nasty confrontation with the Defendant. The Defendant grabbed the horses reins and pulled the horse around and told Plaintiff never to ride over his land again. (Tr. 59-60.)

The evidence established that, over the years, the Defendants have grown crops (such as corn) across the entire easement, which interfered with any reasonable use of the easement. In fact, up to approximately two weeks before the trial, there was standing corn six to eight feet high, but the Defendants bush-hogged a path along the easement approximately two weeks before trial. (Tr. 57.)

There was also testimony and exhibits showing that, at various times and on a regular basis, Defendants used the easement as part of a staging area or lay down yard for large parts, crating, and building materials used in their silo construction business. Many of the materials were not on trucks or trailers and were clearly left for extended periods of time blocking portions of the easement. (Plaintiff's Ex. 5; Tr. 66-67, 99-100, 111, 135.) It is also obvious from the evidence that Defendants had more than adequate space which was not encompassed within the easement which could have easily been used for a business related storage area.

Although the Jury's verdict is advisory, it does "inform the Chancellor's conscience" of the community's assessment of the facts of the case, the damages suffered by the Plaintiff, and whether the Defendants acted in a willful and wanton manner. See, e.g., *Angstadt v. Atlantic Mut. Ins. Co.*, 254 Va. 286 (1997); see also, *Bryson on Virginia Civil Procedure* (3d ed.) p. 323.

After hearing all of the evidence, I find that there has been an intentional and premeditated effort by the Defendant to block the lawful right of way that the Plaintiff had recognized by this Court in its order of March 17, 1988. I find that the interference was intentional with the motive of depriving Plaintiff the use of his property rights. I rely heavily on the guidance provided by the jury, but I find that the Plaintiff has only suffered compensable damages of $10,000.00. Therefore, this Court hereby orders, adjudges, and decrees that judgment for $20,000, consisting of $10,000 in compensatory damages and $10,000 in punitive damages be and is entered in favor of Plaintiff and against Defendants.

All other motions filed by the Defendants, which have not previously been ruled upon, are hereby denied.

The Clerk of the Court is directed to send certified copies of this Opinion and Order to Dabney Overton, Jr., Esquire, Counsel for the Plaintiff; and to Timothy E. Cupp, Counsel for Defendants.