This is an appeal by the plaintiffs, George Kerrigan and James Kerrigan, from an order declaring that they had abandoned an easement granted to them by the defendants, Michael and Anita Sherrer, and that the easement is of no further force and effect. We reverse and remand.
On July 23, 1985, the Sherrers granted "George Kerrigan, his heirs and assigns, a [30-foot-wide] right-of-way easement for ingress, egress, and regress of vehicular and pedestrian traffic." The instrument granting the easement further provided:
 "By accepting this easement the said George Kerrigan agrees to maintain said right-of-way at his expense and to keep it clean and free from debris, trash and other unsightly material.
 "If the right-of-way is abandoned for a period of one (1) year or more, then same shall no longer be of any force and effect. "
By letter dated December 11, 1986, the attorneys representing the Sherrers notified George Kerrigan that the right of way easement granted to him on July 23, 1985, was "of no force and effect, the same having been abandoned for more than one year." George Kerrigan was "further notified and requested to refrain from trespassing on the property described in the easement." Following this letter, the Sherrers erected a fence across the easement and removed the stakes marking the borders of the easement.
Thereafter, on January 6, 1987, George Kerrigan filed his complaint seeking to enjoin the Sherrers' interference with the use, maintenance, and development of the easement conveyed to him by the Sherrers.[1] In their answer, the Sherrers denied the allegations of the complaint and filed a counterclaim seeking to have the easement declared to be of no further force and effect. The Sherrers alleged that George Kerrigan had abandoned the easement for more than one year and had, therefore, under the terms of the easement, abandoned it. *Page 75 
Plaintiffs claim that the language in the express grant of the "easement for ingress, egress, and regress of vehicular and pedestrian traffic" is clear and unambiguous and is not subject to interpretation by the trial court. The law in Alabama is well settled: "[T]he Court must look to the written instrument to determine the scope of the grant."City of Montgomery v. Maull, 344 So.2d 492, 495
(Ala. 1977). In construing the granting instrument to ascertain the intention of the parties, the plain, clear meaning of its terms must be given effect, and "the parties must be legally presumed to have intended what is plainly and clearly set out." Camp v. Milam, 291 Ala. 12, 16,277 So.2d 95, 98 (1973). Accord, Financial InvestmentCorp. v. Tukabatchee Area Council, Inc., Boy Scouts ofAmerica, 353 So.2d 1389 (Ala. 1977). The court cannot look beyond the "four corners of the grant to construe its terms unless the court determines that the language or its meaning is ambiguous." Camp, supra.
In the present case, the trial court noted in its order that "the stated purpose of the 30-foot right-of-way was for access from Donnell Boulevard to the property owned by the Plaintiffs for vehicular and pedestrian traffic." The trial court did not find that the granting instrument was in any way ambiguous. However, while the trial court purported to ascertain the intent of the parties from the four corners of the instrument, as is evidenced by its order, the court, nevertheless, looked to extrinsic evidence to determine that, notwithstanding the unambiguous language in the easement instrument, which clearly allowed for vehicular andpedestrian traffic, the appellant's use of the easement for "occasional pedestrian crossing" was insufficient to prevent the operation of the abandonment clause in the document granting the easement. We quote at length from the trial court's order:
 "The Court notes that the property of the Plaintiffs is located adjacent to the Fort Rucker military reservation and contains a number of trailer rental units, and that the only access thereto excluding this easement is Daleville Avenue, a main thoroughfare traversing the city of Daleville just South of the Fort Rucker gate. The Court finds that the description contained in the written instrument provides for a 30-foot right-of-way from the north right-of-way of Donnell Boulevard for a distance of 85 feet to the property line of the Plaintiffs. It is obvious from a reading of the written instrument that the parties contemplated an access route from Donnell Boulevard to the property of the Plaintiffs, which would provide a substantial alternative to the access from Daleville Avenue for the purpose of moving trailers and other vehicular traffic into the Plaintiff's property. The Court finds that there has been only limited use of this accessway by the Plaintiffs across rather rugged terrain by a few pedestrians and employees of the Plaintiffs. The Court finds that there has been absolutely no improvement or construction work begun to provide for vehicular traffic on the right-of-way in question.
 "It is unreasonable to believe that the granting of a 30-foot right-of-way would have been contemplated between the parties for mere occasional use by a person on foot. The Court therefore finds that the provision in said written instrument providing that if the right-of-way was abandoned for a period of one year or more that the easement would no longer be of any force and effect is not tolled by occasional pedestrian crossing. Stated differently, the Court finds that the intent of the parties from the four corners of the instrument was that if a 30-foot improved right-of-way suitable for vehicular as well as pedestrian traffic was not commenced within a period of one (1) year from July 23, 1985, then said easement was abandoned and the written instrument was of no further force and effect."
(Emphasis added.) The condition that the appellantsmust use the easement for vehicular traffic or be held to have abandoned it is not apparent on the face ofthe instrument granting the easement. Further, absent a finding of ambiguity, it was improper for the trial court to consider evidence that it was the true intentions of the parties that the appellants would make improvements on the easement for the unstated purpose of moving trailers and other *Page 76 
vehicular traffic into the appellants' property. Had the appellees wished to so condition the use or abandonment of the easement, they could have easily done so within the four corners of the instrument.
Nor do we find the instrument ambiguous as to the contemplated use of the easement, and therefore subject to interpretation by resort to extrinsic evidence (facts aliunde or facts in pais). In clear language, the instrument expresses the appellees' intention to grant appellants, without condition, an easement for vehicular andpedestrian traffic. Appellees' intentions as to any restrictions on the quantum or quality of the use of the easement are not expressed. Under the terms of the instrument, appellants are required only to maintain the easement and use the easement in order not to be deemed to have abandoned it.
Because appellants, in fact, used the easement in a manner expressly consistent with the granting instrument, the trial court's order declaring the easement to be of no further force and effect is due to be, and it is hereby, reversed and the cause is remanded for an order consistent with this opinion.
REVERSED AND REMANDED.
TORBERT, C.J., and MADDOX, ALMON and HOUSTON, JJ., concur.
[1] James Kerrigan, brother of George, was made a party plaintiff at the time of trial by order of the court.