Gary Price and Martha Price (the "servient owner") own real estate subject to an easement that is now owned by Deborah Lynn McNeil (the "dominant owner"). The servient owner and the dominant owner are adjacent landowners. In July 1998, the servient owner sued the dominant owner, alleging that the dominant owner wrongfully obstructed their use of the easement. The dominant owner counterclaimed, contending that the servient owner had no right whatever to use the easement. Following the presentation of ore tenus evidence, the trial court entered a judgment for the dominant owner, ruling that the servient owner has no right to use the easement. The servient owner appealed to the supreme court, which transferred the case to this court pursuant to Ala. Code 1975, §12-2-7(6). The servient owner argues on appeal that the trial court erred, as a matter of law, by concluding that they have no right to use the easement.
The trial court's judgment, in effect, concluded that the easement is an exclusive easement — one that excludes any use by the holder of the servient estate. The conveyance of the easement provides for "A perpetual easement for ingress and egress." The supreme court has discussed exclusive easements:
 "It is well settled in Alabama that the owner of the servient estate may himself use the land upon which an easement has been dedicated so long as such right does not conflict with the purpose and character of the easement. Carter v. Stringfellow, 293 Ala. 525, 306 So.2d 273 (1975).
". . . .
 "In Keeler v. Haky, 160 Cal.App.2d 471, 325 P.2d 648
(1958), a case cited with approval in Moss v. Vance, 288 Ala. 224, 259 So.2d 252 (1972), the California District Court of Appeals was confronted with a somewhat similar question. The issue there was whether an instrument granting an easement of `full and free right(s) . . . for all purposes connected with the use of said grantee's land, to pass and repass along, over and upon said private road . . .' conveyed an easement which would exclude the servient owners. The Court refused to accept the argument that the easement was exclusive. Instead, the Court held, viz.: *Page 1056 
 "`. . . We cannot hold in line with the trial court's ruling that by the employment of the terms "full and free" and "all purposes" the use was intended to be exclusive to the grantees and for all purposes connected with their property. The document clearly indicates that the right which is unrestricted, or "free and full" is the right to "pass and repass" across the easement, and even the extent of this right is limited by the use of others who have the same, or like, right. The phrase "all purposes" as used in the instrument does not imply that all rights in connection with use of the dominant estate are conveyed, but only the right to pass and repass for all purposes connected with the use of the grantees' land. . . .
 "`Any claim that the deed makes no reservation or exception in favor of the grantor is without merit. . . . [A]n easement deed does not "grant" anything to the servient estate since it retains all that which the deed does not give away. . . . (Citation omitted.)
"`. . . .
 "`The extent of a servitude is determined by the terms of the grant creating it. . . . [W]here an easement is founded on a grant, only those interests expressed therein and necessary for its reasonable and proper enjoyment pass from the owner of the fee. . . . [An exclusive easement] cannot be implied from the clear language of the deed. . . . "Furthermore, an `exclusive easement' is an unusual interest in land; it has been said to amount almost to a conveyance of the fee. 2 Thompson, Real Property 1939, § 578; Jones, Easements, § 378, p. 302. No intention to convey such a complete interest can be imputed to the owner of the servient tenement in the absence of a clear indication of such an intention. . . ."'"
Duke v. Pine Crest Homes, Inc., 358 So.2d 148, 150-51 (Ala. 1978).
The conveyance of the easement being interpreted by the Duke court granted a "limited easement for a private single family residence driveway, and no other purpose." Id. at 149. The court concluded, after discussing the nature and requirements of exclusive easements, that the easement was not exclusive, "especially in view of the fact that the instrument [creating the easement] fails to evince a clear, unambiguous
intention on the part of the grantors of the easement to exclude themselves or their successors from its use." Id. at 151 (emphasis added).
In Blalock v. Conzelman, 751 So.2d 2 (Ala. 1999), the supreme court interpreted "an easement for ingress and egress to and from said property" as providing a nonexclusive easement. The court explained:
 "`A principle of concurrent, rather than exclusive, use underlies the law concerning easement.' McMahon v. Hines, 298 Ill. App.3d 231, 239, 697 N.E.2d 1199, 1206, 232 Ill. Dec. 269, 276 (1998). `Therefore, use of an easement by both [the dominant and the servient] landowners must be permitted in accordance with their individual interests.' Id. See also Fedorko Properties, Inc. v. C.F. Zurn Assocs., 720 A.2d 147 (Pa.Super. 1998) (the mere use of the term `exclusive easement' in an easement conveyance did not `grant an easement exclusive of the servient estate'). Nothing in the deeds . . . suggests the Conzelmans' easement was granted or reserved exclusively for them."
Id. at 6.
The Virginia Supreme Court, interpreting a conveyance of "an exclusive easement of right of way for purpose of ingress and egress to State Route 33," held that it was not an exclusive easement. Walton v. CapitalLand, Inc., 252 Va. 324, 325, 477 S.E.2d 499, 500 (1996). The Virginia court explained that although the easement used the word "exclusive," nevertheless, the conveyance limited the easement in two *Page 1057 
respects. "First, the easement is limited to use as a `right of way' and second, the right of way can only be used for the `purpose of ingress and egress to State Route 33.'" 252 Va. at 327, 477 S.E.2d at 501. Similarly, in this case, the easement is limited to the "purpose of ingress and egress . . . to Mount Pleasant Church Public Road." Based on the fact that the conveyance of the easement does not "evince a clear, unambiguous intention" to create an exclusive easement (Duke, 358 So.2d at 151), and the fact that the conveyance itself conveys a limited right of use for the dominant estate (Walton, supra), we conclude that the trial court erred by holding that the easement was exclusively for the use of the one holding the dominant estate.
The dominant owner argues that she presented evidence indicating that the easement was intended to be an exclusive easement and that the trial court properly concluded that the easement was exclusive. We disagree. The supreme court has stated the fundamental rule to be applied in interpreting the language of an easement:
 "`The law in Alabama is well settled: `[T]he Court must look to the written instrument to determine the scope of the [easement].' City of Montgomery v. Maull, 344 So.2d 492, 495 (Ala. 1977). In construing the granting instrument to ascertain the intention of the parties, the plain, clear meaning of its terms must be given effect, and `the parties must be legally presumed to have intended what is plainly and clearly set out.' Camp v. Milam, 291 Ala. 12, 16, 277 So.2d 95, 98 (1973). Accord, Financial Investment Corp. v. Tukabatchee Area Council, Inc., Boy Scouts of America, 353 So.2d 1389 (Ala. 1977). The court cannot look beyond the `four corners of the grant to construe its terms unless the court determines that the language or its meaning is ambiguous.' Camp, supra.'"
Kerrigan v. Sherrer, 535 So.2d 74, 75 (Ala. 1988). We conclude that the document creating the easement in this case unambiguously created a nonexclusive easement and that the extrinsic evidence regarding the intent of the grantor and the grantee was not admissible. Id. at 75 (holding that the trial court erred in considering the intent of the parties when the document creating the easement was unambiguous).
Therefore, the judgment of the trial court is reversed and the cause is remanded for the trial court to determine the extent to which the holders of the servient estate are allowed to use the easement. See Blalock, 751 So.2d at 6; Duke, 358 So.2d at 151.
REVERSED AND REMANDED WITH INSTRUCTIONS.
Robertson, P.J., and Yates, Monroe, and Thompson, JJ., concur.